IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARC JACOBS TRADEMARKS, LLC and MARC JACOBS INTERNATIONAL, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ZHENHONG666, <br><br> Defendant. | Case No. 25-cv-13948 <br><br> **Judge John Robert Blakey** <br><br> **Magistrate Judge Gabriel A. Fuentes** |

**AMENDED COMPLAINT**

Plaintiffs Marc Jacobs Trademarks, LLC ("MJT") and Marc Jacobs International, LLC ("MJI") (collectively, the "MJ Entities" or "Plaintiffs") hereby bring the present action against zhenhong666 and allege as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant since Defendant directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce store operating under the seller alias (the "Seller Alias"). Specifically, Defendant has targeted sales from Illinois residents by setting up and operating an e-commerce store that targets United States consumers using at least the Seller Alias, offers shipping to the United States, including Illinois, accepts payment in U.S. dollars and/or funds from U.S. bank

accounts, and, on information and belief, has sold products using infringing versions of the MJ Entities' federally registered trademarks to residents of Illinois. Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by the MJ Entities to combat an e-commerce store operator who trades upon the MJ Entities' reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including handbags, clothing, and jewelry using infringing versions of the MJ Entities' federally registered trademarks including, without limitation, the federally registered MARC JACOBS trademark (the "Unauthorized MARC JACOBS Products"). Defendant created an e-commerce store operating under the Seller Alias that is advertising, offering for sale and selling Unauthorized MARC JACOBS Products to unknowing consumers. Defendant attempts to avoid and mitigate liability by operating under at least the Seller Alias to conceal both its identity and the full scope and interworking of its operation. The MJ Entities are forced to file this action to combat Defendant's infringement of the MJ Entities' registered trademarks, as well as to protect unknowing consumers from purchasing Unauthorized MARC JACOBS Products over the Internet. The MJ Entities have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks as a result of Defendant's actions and seek injunctive and monetary relief.

## III. THE PARTIES

**Plaintiffs**

4. Plaintiff Marc Jacobs Trademarks, LLC is a limited liability company organized and existing under the laws of Delaware, having its principal place of business at 72 Spring Street, New York, New York 10012.

5. Plaintiff Marc Jacobs International, LLC is a limited liability company organized and existing under the laws of Delaware, having its principal place of business at 72 Spring Street, New York, New York 10012.

6. The MARC JACOBS brand was founded in 1984 by the iconic designer Mr. Marc Jacobs and has become a leader in the design, marketing, and distribution of premium fashion apparel, accessories and lifestyle products. Since 1984, Plaintiffs has sold high-quality apparel, accessories and other products, all of which prominently display their famous, internationally-recognized and federally-registered trademarks, including the MARC JACOBS trademark and the iconic "JJ" design (collectively, the "MARC JACOBS Products"). MARC JACOBS Products have become enormously popular, driven by the MJ Entities' arduous quality standards and innovative design. Among the purchasing public, genuine MARC JACOBS Products are instantly recognizable as such. In the United States and around the world, the MARC JACOBS brand has come to symbolize high quality and prestige.

7. Mr. Marc Jacobs has received substantial recognition from the Council of Fashion Designers of America, Inc. ("CFDA"), including being recognized on multiple occasions as the Womenswear Designer of the Year, Accessory Designer of the Year, and Menswear Designer of the Year. Mr. Marc Jacobs received a Lifetime Achievement Award from CFDA in 2011.

8. In 2019, Mr. Marc Jacobs was presented with MTV's inaugural "Fashion Trailblazer Award" at the MTV Video Music Awards, in partnership with the Council of Fashion Designers of America. MTV said the award was created to "honor a fashion designer who has made an indelible impact within the world of music-artist fashion." Mr. Marc Jacobs arrived at the awards show accompanied by models wearing some of his most "iconic" looks, including pieces previously worn by Lady Gaga, Taylor Swift, Rihanna, and Beyoncé.

9. Genuine Marc Jacobs Products are distributed and sold to consumers through company-operated stores throughout the United States, including in high-quality department stores in Illinois such as Bloomingdale's, Nordstrom, Neiman Marcus, and Saks Fifth Avenue, and through the marcjacobs.com website which ships throughout the US (including in Illinois) and to select international destinations.

10. The MJ Entities have continuously sold MARC JACOBS Products under the MJ Entities' trademarks in the United States for many years. The MJ Entities incorporate a variety of distinctive marks in the design of the various MARC JACOBS Products. As a result of their long-standing use, the MJ Entities own common law trademark rights in these trademarks. The MJ Entities have also registered trademarks with the United States Patent and Trademark Office. MARC JACOBS Products typically include at least one of the MJ Entities' federally registered trademarks. Often, the MJ Entities' trademarks are displayed in more than one location on a single product (*e.g.*, interior label, lining, or external name plate or hardware). The MJ Entities use their trademarks in connection with the marketing of the MARC JACOBS Products, including the following marks, which are collectively referred to as the "MARC JACOBS Trademarks."

4

| Registration Number | Trademark |
|---|---|
| 5,101,542 5,101,543 5,120,532 5,200,762 | (logo) |

11. The above U.S. registrations for the MARC JACOBS Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the MARC JACOBS Trademarks constitute *prima facie* evidence of their validity and of the MJ Entities' exclusive right to use the MARC JACOBS Trademarks pursuant to 15 U.S.C. § 1057(b). The MARC JACOBS Trademarks have been used exclusively and continuously by the MJ Entities for many years, and have never been abandoned. True and correct copies of the United States Registration Certificates for the above-listed MARC JACOBS Trademarks are attached hereto as **Exhibit 1**.

12. The MARC JACOBS Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As a result, the MARC JACOBS Trademarks are both famous marks and valuable assets. As such, the MJ Entities have built substantial goodwill in the MARC JACOBS Trademarks, which is of incalculable and inestimable value to the MJ Entities.

13. The MARC JACOBS Trademarks have been widely promoted, both in the United States and throughout the world. In fact, the MJ Entities have expended millions of dollars in advertising, promoting and marketing featuring the MARC JACOBS Trademarks. MARC JACOBS Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as desired luxury items. The MJ Entities augment this unsolicited media coverage with extensive paid advertising featuring internationally-known celebrities. For example, the MARC JACOBS' Fall 2015 advertising campaign featured

Cher, Christy Turlington, Emily Ratajkowski, Sofia Coppola, Willow Smith, and Winona Ryder, and the MARC JACOBS' Spring 2016 advertising campaign featured Lana Wachowski, Sandra Bernhard, Bette Midler, Juliette Lewis, Christina Ricci, Sky Ferreira, and Bella Had*Id*.  More recently, Christy Turlington was the face of the MARC JACOBS' Fall 2019 campaign, and Sasha Knysh and Vaughan Ollier front MARC JACOBS' spring-summer 2020 campaign photographed by Steven Meisel, one of the most successful fashion photographers in the industry.  Because of these and other factors, the MARC JACOBS name and the MARC JACOBS Trademarks have become famous throughout the United States.

14. The MARC JACOBS Trademarks are also used in connection with the MARC JACOBS fashion shows held in New York, New York during New York Fashion Week.  The MARC JACOBS fashion shows receive a great deal of unsolicited press and critical acclaim from fashion magazines, blogs and trade publications, for example, Vogue.com, HarpersBazaar.com, Fashionista.com, thecut.com, and Women's Wear Daily ("WWD").

15. The MARC JACOBS Trademarks are distinctive when applied to the MARC JACOBS Products, signifying to the purchaser that the products come from the MJ Entities and are manufactured to the MJ Entities' quality standards.  The MJ Entities maintain quality control standards, and MARC JACOBS Products are inspected and approved by or on behalf of the MJ Entities prior to distribution and sale.

16. The MJ Entities operate a website at marcjacobs.com where genuine MARC JACOBS Products are promoted and sold.  The marcjacobs.com website features proprietary content, images and designs exclusive to the MJ Entities.

17. The MJ Entities have expended substantial time, money, and other resources in developing, advertising and otherwise promoting and protecting the MARC JACOBS Trademarks.

6

As a result, products bearing the MARC JACOBS Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from the MJ Entities. The MJ Entities run a multi-million-dollar operation, and MARC JACOBS Products are among the most popular of their kind in the world.

**The Defendant**

18. Defendant is an individual or business entity of unknown makeup who owns and/or operates at least the e-commerce store under the Seller Alias and/or other seller aliases not yet known to the MJ Entities. On information and belief, Defendant resides and/or operates in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistributes products from the same or similar sources in those locations. Defendant has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

19. Tactics used by Defendant to conceal its identity and the full scope of its operation make it virtually impossible for the MJ Entities to learn Defendant's true identity and the exact interworking of its infringement network. If Defendant provides additional credible information regarding its identity, the MJ Entities will take appropriate steps to amend the Amended Complaint.

### IV. DEFENDANT'S UNLAWFUL CONDUCT

20. The success of the MARC JACOBS brand has resulted in significant infringement of MARC JACOBS trademarks. Consequently, the MJ Entities have a worldwide anti-counterfeiting program and regularly investigate suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, the MJ Entities have identified many fully interactive e-commerce stores offering Unauthorized MARC JACOBS Products on online marketplace platforms such as PayPal, and Amazon, including the e-

7

commerce store operating under the Seller Alias. The Seller Alias targets consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[1] The primary source of all those counterfeits, the OECD and others say, is China.[2]

21. Third party service providers like those used by Defendant do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[3] Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[4] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[5] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[6]

---

[1] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.
[2] *Id.; See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.
[3] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.
[4] *Id.* at p. 22.
[5] *Id.* at p. 39.
[6] Chow, *supra* note 3, at p. 186-87.

22. Defendant has targeted sales to Illinois residents by setting up and operating an e-commerce store that targets United States consumers using at least the Seller Alias, offers shipping to the United States, including Illinois, accepts payment in U.S. dollars and/or funds from U.S bank accounts, and, on information and belief, has sold Unauthorized MARC JACOBS Products to residents of Illinois. Screenshots evidencing Defendant's infringing activities are attached as **Exhibit 2**.

23. Defendant facilitates sales by designing the e-commerce store operating under the Seller Alias so that it appears to unknowing consumers to be an authorized online retailer, outlet store, or wholesaler. The e-commerce store operating under the Seller Alias appears sophisticated and accepts payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. The e-commerce store operating under the Seller Alias often includes content and images that make it very difficult for consumers to distinguish it from an authorized retailer. The MJ Entities have not licensed or authorized Defendant to use any of the MARC JACOBS Trademarks, and Defendant is not an authorized retailer of genuine MARC JACOBS Products.

24. E-commerce store operators like Defendant also deceive unknowing consumers by using the MARC JACOBS Trademarks without authorization within the content, text, and/or meta tags of their e-commerce store to attract various search engines crawling the Internet looking for websites relevant to consumer searches for MARC JACOBS Products. Other e-commerce stores operating under seller aliases omit using MARC JACOBS Trademarks in the item title to evade enforcement efforts, while using strategic item titles and descriptions that will trigger their listings when consumers are searching for MARC JACOBS Products.

25. E-commerce store operators like Defendant commonly engage in fraudulent conduct when registering seller aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identity and the scope of their e-commerce operation.

26. E-commerce store operators like Defendant regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized MARC JACOBS Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendant to conceal their identities and the full scope and interworking of its operation, and to avoid being shut down.

27. E-commerce store operators like Defendant are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

28. Infringers such as Defendant typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of the MJ Entities' enforcement. E-commerce store operators like Defendant maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to the MJ Entities. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore infringers regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

29. Defendant is working to knowingly and willfully import, distribute, offer for sale, and sell Unauthorized MARC JACOBS Products. Defendant, without any authorization or license

from the MJ Entities, has knowingly and willfully used and continue to use the MARC JACOBS Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized MARC JACOBS Products into the United States and Illinois over the Internet.

30. Defendant's unauthorized use of the MARC JACOBS Trademarks in connection with the advertising, distribution, offering for sale, and sale of Unauthorized MARC JACOBS Products, including the sale of Unauthorized MARC JACOBS Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming the MJ Entities.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

31. The MJ Entities hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

32. This is a trademark infringement action against Defendant based on its unauthorized use in commerce of counterfeit imitations of the federally registered MARC JACOBS Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The MARC JACOBS Trademarks are distinctive marks. Consumers have come to expect the highest quality from MARC JACOBS Products offered, sold or marketed under the MARC JACOBS Trademarks.

33. Defendant has sold, offered to sell, marketed, distributed, and advertised, and is still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the MARC JACOBS Trademarks without the MJ Entities' permission.

34. Plaintiff MJT is the exclusive owner of the MARC JACOBS Trademarks. MJT's United States Registrations for the MARC JACOBS Trademarks (**Exhibit 1**) are in full force and effect. Upon information and belief, Defendant has knowledge of the MJ Entities' rights in the

MARC JACOBS Trademarks, and is willfully infringing and intentionally using counterfeits of the MARC JACOBS Trademarks. Defendant's willful, intentional and unauthorized use of the MARC JACOBS Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized MARC JACOBS Products among the general public.

35. Defendant's activities constitute willful trademark infringement and infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

36. The MJ Entities have no adequate remedy at law, and if Defendant's actions are not enjoined, the MJ Entities will continue to suffer irreparable harm to their reputation and the goodwill of the well-known MARC JACOBS Trademarks.

37. The injuries and damages sustained by the MJ Entities have been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized MARC JACOBS Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

38. The MJ Entities hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

39. Defendant's promotion, marketing, offering for sale, and sale of Unauthorized MARC JACOBS Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with the MJ Entities or the origin, sponsorship, or approval of Defendant's Unauthorized MARC JACOBS Products by the MJ Entities.

40. By using the MARC JACOBS Trademarks on the Unauthorized MARC JACOBS Products, Defendant creates a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized MARC JACOBS Products.

41. Defendant's false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized MARC JACOBS Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

42. The MJ Entities have no adequate remedy at law and, if Defendant's actions are not enjoined, the MJ Entities will continue to suffer irreparable harm to the reputation and the goodwill of the MARC JACOBS Trademarks.

## PRAYER FOR RELIEF

WHEREFORE, the MJ Entities pray for judgment against Defendant as follows:

1) That Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with it be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the MARC JACOBS Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine MARC JACOBS Product or is not authorized by the MJ Entities to be sold in connection with the MARC JACOBS Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine MARC JACOBS Product or any other product produced by the MJ Entities, that is not the MJ Entities' or not produced under the authorization, control, or supervision of the

        MJ Entities and approved by the MJ Entities for sale under the MARC JACOBS Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendant's Unauthorized MARC JACOBS Products are those sold under the authorization, control or supervision of the MJ Entities, or are sponsored by, approved by, or otherwise connected with the MJ Entities;

    d. further infringing the MARC JACOBS Trademarks and damaging the MJ Entities' goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for the MJ Entities, nor authorized by the MJ Entities to be sold or offered for sale, and which bear any of the MJ Entities' trademarks, including the MARC JACOBS Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon the MJ Entities' request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as PayPal, and Amazon (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of counterfeit and infringing goods using the MARC JACOBS Trademarks;

3) That Defendant account for and pay to the MJ Entities all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of the MARC JACOBS Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that the MJ Entities be awarded statutory damages for willful trademark infringement pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the MARC JACOBS Trademarks;

5) That the MJ Entities be awarded their reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 17th day of November 2025.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jennifer V. Nacht
Hannah A. Abes
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jnacht@gbc.law
habes@gbc.law

*Counsel for Plaintiffs Marc Jacobs Trademarks, LLC and Marc Jacobs International, LLC*